**JONNEL ENTERPRISES, INC.,**
**Appellant,**

v.

**DOLLAR SAVINGS BANK OF NEW YORK, Appellee.**

**No. 916, Docket 79–7793.**

United States Court of Appeals, Second Circuit.

Argued March 19, 1980.

Decided June 13, 1980.

Richard L. Rosenzweig, Pittsburgh, Pa. (Rosenzweig, Rosenzweig & Burton, Pittsburgh, Pa.), for appellant.

Eric P. Reif, Pittsburgh, Pa. (Reed, Smith, Shaw & McClay, Craig W. Jones, Nancy J. Shurlow, Pittsburgh, Pa., of counsel; Dwight B. Demeritt, Jr., Thacher, Proffitt & Wood, New York City, of counsel), for appellee.

Before LUMBARD, MULLIGAN and OAKES, Circuit Judges.

OAKES, Circuit Judge:

This appeal is from an order denying a motion for a new trial after a jury verdict in favor of Dollar Savings Bank of New York (Dollar) in the United States District Court for the Southern District of New York, Kevin T. Duffy, Judge. The motion for a new trial was grounded on a remark made by the court during cross-examination of a Dollar witness, on certain portions of the charge, and on the court's use of special

interrogatories. Bearing in mind the principles of Fed.R.Civ.P. 61,[1] we affirm.

The complaint in this suit, brought by a Pennsylvania real estate developer and his two corporations engaged in the development of the Monroe Plaza Shopping Center in Monroeville, Pennsylvania (collectively "Jonnel"), against Dollar, a New York mutual savings bank, alleged breach of a commitment to lend Jonnel $1,100,000, to be secured by a mortgage on the shopping center. The principal defenses at trial were (1) that the amount of the mortgage commitment had been validly reduced, first from $1,100,000 to $925,000 and then to $800,000, an amount that would have been insufficient to cover all outstanding judgments and liens against the property so as to give Dollar its requisite first mortgage; and (2) that Dollar's counsel did not unreasonably or arbitrarily withhold their opinion that the title to the premises was satisfactory as of the date on which the commitment terminated by its terms. In connection with these defenses Dollar introduced evidence that some $845,000 worth of judgments and liens against the premises were not sufficiently cleared up to enable a closing to take place, and further argued that possibilities of violations of law existed, contrary to the mortgage commitment agreement,[2] in that the Borough of Monroeville had not indicated zoning compliance and the Commonwealth of Pennsylvania had never issued a required Certificate of Occupancy. Dollar also argued that Jonnel or its representatives simply had not taken adequate steps to prepare for or schedule a closing in New York before July 31, 1969, when the mortgage commitment expired. Because Jonnel had apparently made some efforts to schedule a closing in the days just before the deadline, some of the testimony at trial focused on the mechanics of a closing, especially on what arrangements must be completed *before* a closing is actually held.

█ Jonnel's first claim is that the trial judge made prejudicial remarks during the cross-examination of Mr. Kurt Lore, a lawyer for Dollar. The comment complained of is contained in the portion of the transcript set forth in the margin.[3] Jonnel objects to the judge's statement that as a "straight question of law" satisfaction of outstanding judgments on payment at closing, or subordination of them, would not have made the Dollar mortgage a valid first lien. This, Jonnel contends, was not only

1. Fed.R.Civ.P. 61 reads:

No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

2. The commitment papers provided in pertinent part:

It is understood that, if the Bank accepts this application, its obligation to make the loan shall be conditioned upon:

.    .    .    .    .

4) The opinion of Bank's counsel that title of the premises is satisfactory, that the premises are free from conditions involving violations of law, and that all documents and supporting papers are satisfactory as to form and content. In the event title should be disapproved by the Bank's counsel, by reason of defects not caused or reasonably curable by the applicant, the Bank will return the aforesaid deposit.

3. Q. My question was, though, that if the things that happened in those two years, the things that were on record, if they were judgments—judgments were satisfied on payment at the closing or subordinated, then your mortgage would be a valid first lien?

THE COURT: Is this a straight question of law or this man's opinion?

MR. ROSENZWEIG: This man's opinion.

THE COURT: If it is a straight question of law, the answer is no.

MR. ROSENZWEIG: Your Honor, I submit that under Pennsylvania law, the answer should be yes.

MR. REIF: We are not dealing with Pennsylvania law.

MR. ROSENZWEIG: Yes, we are.

THE COURT: I really don't care. Go ahead, ask the man—you are an expert in New York law and you are recognized as such. This is the only thing you are qualified in. Answer under Pennsylvania law. (Emphasis added.)

clearly untrue under controlling Pennsylvania law, as was pointed out to the court immediately, but made "such an impact upon the jury as to make their fair consideration of the primary issue in the case impossible." Dollar argues on the other hand that no objection was made and that in any event any error was harmless. We will treat counsel's express disagreement with the judge as a valid objection under Fed.R.Civ.P. 46. But we conclude that the remarks did not affect the outcome.

In the first place, the cross-examination did not, as appellant contends, relate directly to the "primary issue for the jury." At this point in the trial, Jonnel's counsel was trying to show that it was unreasonable for Dollar's lawyer to withhold his opinion that the title to the premises was satisfactory. In doing so, in earlier cross-examination set out in the margin,[4] he had already elicited a concession from Mr. Lore contrary to the court's statement—i. e., a statement that Dollar could have gotten a valid first lien if other liens and judgments were all satisfied. Subsequently no one argued, and the judge certainly did not charge,[5] the theory of the case that the judge evidently[6] was acting upon at the time he made these remarks. No one, that is, claimed that a valid first lien for Dollar would never have been possible, regardless of whatever other liens were eliminated. Instead, Dollar centered its defense on the contention that Jonnel's preparations simply were not sufficiently completed prior to the deadline. And the judge's instructions also treated this question as the main issue. In short, while the judge's remarks were unfortunate, we simply cannot say that Dollar may have won because of them. Thus, any error does not rise to a level requiring the granting of a new trial under Rule 61.

■ Jonnel's next point is that the court below erred in its charge to the jury concerning what Jonnel had to show at trial about its preparations for a closing. The portion of the charge objected to is set out in the margin.[7] The argument is, in effect,

---

4. Q. Let met ask you this question, Mr. Lore. If we get to the date of the proposed closing and there are funds to pay the mechanic's liens and the judgments are either paid or subordinated, there then would have been a valid first lien for Dollar Savings Bank?

A. Not necessarily, because I just spoke of the 27 judgments as being the most important objections to title. There are other objections to title.

Q. If we limit it then to the 27 judgments, if they were taken care of at the time of closing, though, they would not be a problem as far as a valid first lien of Dollar Savings Bank?

A. Correct.

5. The court charged:

Here the plaintiff must show that the title to the premises was satisfactory and free from violation of law and that all the documents were satisfactory.

Plaintiff had to satisfy these conditions in the opinion of the bank's counsel.

Now, you heard Mr. Lore, one of the bank's lawyers testify as to this. These conditions require the bank's counsel to approve the plaintiff's title and documents. However, counsel for the bank cannot withhold such approval arbitrarily or unreasonably. If you find that bank's counsel were unreasonably withholding the approval and should have approved the plaintiff's title, then you may find this condition has been met.

6. We say "evidently" because it is possible that the court's statement related back to the question and answer immediately preceding the passage quoted in footnote 3. The question and answer were:

Q. Now, if the judgment and liens of records that were shown in the title report were satisfied or subordinated at the closing, there would be no question that your mortgage would be a valid first lien regardless of whether the construction loan was a valid first lien?

A. Well, that's not easy to answer. The reason we had proposed taking the $800,000 mortgage, two year-old mortgage by assignment, was that the borrower would have the advantage then of priority, dating back to two years ago. Whereas if that mortgage were satisfied, everything that happened in the last two years would have had priority over a new mortgage. So that's why we were talking about the taking of the mortgage by assignment and then modifying it.

7. This portion of the charge read:

There was testimony before you as to certain liens and judgments filed against the property. It was suggested that the custom was that if the funds were available at the closing then the liens and judgments could be paid and the subordination agreements and everything else could be done at the time of the closing. That was the suggestion as to the custom.

that in this instruction the court adopted the defendant's argument that custom and practice require assurances from the borrower about the handling of all other liens, *prior* to the closing date of the loan. Appellant considers this instruction unjustified by the evidence presented. We disagree.

Both of the lawyers who testified about closings indicated that at least some preclosing preparations are customary. Jonnel's lawyer, Harry Menzer, testified about Pennsylvania practices. He stated that major arrangements affecting the title, such as paying off existing liens, transferring insurance to the new mortgagee, and assigning leases, generally take place at the closing itself. However he also described a previous deal that included a "pre-closing," describing this meeting as an occasion for the parties to undertake the time-consuming task of making sure that all the documents "comport." Kurt Lore, Dollar's New York counsel, who described the New York practices, was also somewhat ambiguous about the subject of preparations prior to the closing. When asked about the mechanics of closing a deal he did state that "[i]n New York we gather information after having made substantially sure that the title report is or will be marked up, that is marked up by the representative of the title company in a fashion satisfactory to the lender."

In addition, common sense does indeed, as the judge suggested, lead one to doubt that the lender's lawyers are expected to render an immediate opinion on the validity of title with all the documents on that subject just submitted at the time of the closing. The record therefore contains a substantial foundation for that portion of Judge Duffy's charge concerning the customs and practices followed at real estate closings.

> Use your common sense and see if that custom holds up in your analysis. If that does hold up in your analysis as to a closing where there is sufficient money coming from the bank to cover the liens and prior judgments, then ask whether that custom would also hold up as to the situation where the liens and prior judgments were in excess of the amount to be loaned by the bank.

■ Jonnel's third argument is that the trial judge committed prejudicial error by charging the jury on the principles of estoppel in connection with the alleged modification of the mortgage commitment. The modifications involved obligated Dollar to lend amounts less than the original commitment of $1.1 million in the event that Jonnel failed to meet its initial goal of leases with $180,000 annual rent. They also added a requirement that a certain percentage of the leases obtained be for "AAA I rated tenants." These modifications were intended to aid Jonnel in obtaining short-term construction financing by decreasing the risk that Dollar's long-term loan would fall through. The validity of these modifications was an issue at trial because of Dollar's defense that a lower loan figure of $800,000 would not have been sufficient to cover the outstanding liens.

Estoppel was charged because the letters purporting to modify the commitment were not agreed to in writing by Jonnel. Jonnel's Point for Charge Number Two was that any modification of the original mortgage commitment (with the exception of the expiration date, which Dollar later extended unilaterally as it was authorized to do) was unenforceable unless evidenced by a written document signed by both Jonnel and Dollar. The court, however, charged the jury that it could find that there were valid modifications under an estoppel theory, apparently on the basis that, when Dollar extended the expiration date of the mortgage commitment over one year later, it was relying on Jonnel's acceptance of the modification in amounts.

No objection was taken to this portion of the charge and that alone is sufficient to prevent Jonnel from prevailing on appeal under Fed.R.Civ.P. 51. True, Jonnel did request a charge that would have obviated

> Now, in considering whether or not defendant's counsel was unreasonable in withholding approval, remember that the *burden is on the plaintiff to give evidence and assurance to the bank that any of these outstanding liens on the property could be easily paid off and present little, if any, problem and that this evidence was to be given prior to the closing date of the loan.* (Emphasis added).

the estoppel charge that was ultimately given, but we think there was ample evidence to indicate that the modifications were clearly understood by appellant and became part of its contractual arrangements with appellee. The changes were made to help make the transaction go through, since construction lenders needed assurance that a permanent mortgage would be forthcoming even if the leases ultimately signed were less valuable than anticipated. The modifications mainly increased the obligations of *Dollar*, because the bank was required to lend money even if total signed leases were some $50,000.00 a year less in rentals than was originally specified in the initial $1,100,000 commitment. Moreover, there was an admission in the testimony of Mr. Jonnet, appellant's president, that he had agreed to take the $800,000 specified as a possible loan amount in the second modification letter, even though he already owed the construction lender $845,000. He hoped that one of the construction lenders, Commercial Bank and Trust Co., would loan him the balance on the strength of his previous dealings with it. Thus, appellant's contention that there was "no evidence or testimony in the entire case that plaintiff accepted the modifications as proposed in these letters" is simply not true.

■ Jonnel's last contention, which it also neglected to preserve for appeal by failure to object, is that the district court committed error by permitting the jury to return a verdict for Dollar without answering certain special interrogatories that had been submitted to it. These interrogatories pertained to whether Jonnel fulfilled the conditions for the loan prior to the deadline, whether there was a valid modification of the contract, whether the contract required Jonnel to obtain certain rental levels for "major" or "triple A" tenants and whether those levels were met, and whether Dollar unreasonably withheld approval of Jonnel's title and documents. The court instructed the jury to answer these questions if it found for Jonnel, but not if it found for Dollar.

The argument is that the questions would have been equally useful in explaining the jury's verdict in favor of Dollar. We take it that the judge considered these questions relevant only to damage issues, although Jonnel argues correctly that they also related to some of Dollar's defenses to liability. Nevertheless, we see no reason why such questions were essential in this case. It was therefore quite proper for the court to use the special interrogatory procedure only for damages. The fact that they had to be answered in case of a verdict in favor of Jonnel, but not in case of a verdict in favor of Dollar is, we think, immaterial.

Judgment affirmed.